IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

MISTI LANCE                                                                           PLAINTIFF

V.                                    NO. 4:14CV00710-JTR

CAROLYN W. COLVIN,                                                           DEFENDANT
Acting Commissioner,
Social Security Administration

## MEMORANDUM AND ORDER

### I. Introduction

Plaintiff, Misti Lance, has appealed the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Both parties have filed Appeal Briefs, *Docs. 11 & 12*, and the issues are now joined and ready for disposition.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g).

On January 3, 2012, Lance protectively filed applications for DIB and SSI, alleging disability since December 31, 2010. (Tr. 240-59, 283.) In her Disability Report-Adult, she stated that she was disabled because of hearing loss, speech

problems, anxiety, learning problems, attention deficit hyperactivity disorder ("ADHD"), back problems, depression, thyroid problems, insomnia, acid reflux, and anemia. (Tr. 288.) After her claims were denied at the initial and reconsideration levels, she requested a hearing before an Administrative Law Judge ("ALJ").

On August 20, 2013, the ALJ conducted an administrative hearing, where Lance and a vocational expert testified. (Tr. 126-68.) At the time of the hearing, Lance was twenty-six years old. (Tr. 282.) She had completed high school, medical assistant school, phlebotomy training, and two years of college. (Tr. 132-33, 150-51, 289.) She had past relevant work as a reception clerk. (Tr. 133, 146-48, 162-63.)

In her September 27, 2013 decision, the ALJ found that Lance: (1) had not engaged in substantial gainful activity since her alleged onset date; (2) had "severe" impairments consisting of ADHD, bipolar disorder, depression, borderline intellectual functioning, and hearing loss; (3) did not have an impairment or combination of impairments meeting a Listing; (4) had the residual functional capacity ("RFC") to perform a modified range of medium work,[1] and could not perform her past relevant

---

[1]Specifically, the ALJ found that Lance had the RFC: (1) to lift, carry, push and pull 50 pounds occasionally and 25 pounds frequently; (2) to sit, stand or walk a total of six hours each, intermittently, throughout the eight-hour workday; (3) to perform simple, routine, repetitive work with one, two or three-step instructions; (4) to work in a supervised, low stress environment that requires few decisions; (5) to occasionally interact with the public, co-workers and supervisors as part of the job function; and (6) to perform jobs without strict production quotas or a fast production pace. (Tr. 111.)

work; and (5) could perform other work existing in significant numbers in the national economy, with examples being a laundry worker, janitor, and dishwasher. (Tr. 104-19.) Accordingly, the ALJ concluded that Lance was not disabled.

On October 22, 2014, the Appeals Council denied Lance's request for review of the ALJ's decision, thereby making it the final decision of the Commissioner. (Tr. 1-5.) Lance then filed her Complaint appealing that decision to this Court. *Doc. 2*.

In Lance's Appeal Brief, she argues that the ALJ erred: (1) in evaluating the medical opinions in the record;[2] and (2) in finding Lance's speech impediment and hypothyroidism to be "non-severe" impairments. Because Lance's first argument has merit, the ALJ's decision must be reversed and remanded.[3]

## II. Discussion

In determining Lance's RFC, the ALJ: (1) did not address the opinion of Sam Boyd, Ph.D., a consulting psychologist; (2) gave "little weight" to the opinion of

---

[2]It is the ALJ's job to weigh the relevant medical opinions and to resolve any conflicts among the various medical sources. *Tindell v. Barnhart*, 444 F.3d 1002, 1005 (8th Cir. 2006). In addition, the ALJ bears a responsibility to fairly and fully develop the record. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010). If the ALJ does not find any of the medical opinions credible, then he should develop the record further to include medical evidence of a claimant's limitations. *Flynn v. Astrue*, 513 F.3d 788, 792 (8th Cir. 2008). The ALJ is also required to seek clarifying statements from a medical source if "a crucial issue is undeveloped." *Jones v. Astrue*, 619 F.3d 963, 969 (8th Cir. 2010). Finally, the ALJ is required to order medical examinations and tests "if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Id.*

[3]Accordingly, there is no need to address Lance's second argument.

Brent Oldham, M.D., Lance's treating psychiatrist; (3) gave "significant" weight to the opinion of Chrystal Johnson, M.D., a consultative examiner; (4) gave "significant" weight to the mental and physical RFC assessments of state agency "reviewing" consultants; and (5) rejected some of the opinions of Seth Wright, D.C., Lance's treating chiropractor. (Tr. 115-17.)

First, the ALJ erred in ignoring Dr. Boyd's opinion.[4] An ALJ is required to "evaluate every medical opinion" in the record.[5] Even though Dr. Boyd's opinion predated Lance's alleged onset date by five years, the regulations explicitly recognize the need for longitudinal evidence in evaluating a mental impairment.[6] Dr. Boyd's findings are also relevant to determining the weight that should be afforded to the opinions of Lance's treating psychiatrist, Dr. Oldham, who also found serious deficits

---

[4]In February 2005, Dr. Boyd: (1) performed a "Mental Status Examination, Intellectual Assessment, and Evaluation of Adaptive Functioning"; (2) diagnosed Lance with ADHD and borderline intellectual functioning; and (3) found that she had "significant deficits in communication, social behavior and personal responsibility." (Tr. 374-80.) Although Lance obtained IQ scores within the mentally retarded range of intellectual ability, Dr. Boyd opined that Lance was "clearly not mentally retarded." He based that conclusion on her adaptive functioning, prior IQ scores, and other testing that he performed to assess her achievement in basic academic skills. (Tr. 376-78, 80.)

[5]20 C.F.R. §§ 404.1527(c), 416.927(c); *see also* SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment must always consider and address medical source opinions.").

[6]*See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(D)(2) ("[I]t is vital to obtain evidence from relevant sources over a sufficiently long period prior to the date of adjudication to establish [the claimant's mental] impairment severity."); 20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1) (in assessing a mental impairment, th1e ALJ must consider "all relevant evidence to obtain a longitudinal picture of [the claimant's] overall degree of functional limitation").

in her abilities.[7] Finally, Dr. Boyd's report controverts the ALJ's statement, in finding that Lance did not meeting Listing 12.05(C), that "there was no evidence of an IQ test in the record." (Tr. 109.) The IQ scores obtained during Dr. Boyd's testing are relevant, not only to whether Lance meets the requirements of a Listing, but at all other levels of the sequential evaluation.

Second, the ALJ erred in discounting the opinions of Lance's treating psychiatrist, Dr. Oldham, without identifying, or if necessary obtaining, other medical evidence from a treating or examining source to support the mental RFC determination. On July 25, 2013, Dr. Oldham prepared a "Mental Residual Functional Capacity Questionnaire," based on his treatment of Lance from April 2010 "to present, every one to two months." (Tr. 628.) He concluded that Lance had difficulty carrying out her activities of daily living, was "seriously limited" in her ability to perform most work-related activities, would have difficulty understanding and carrying out simple tasks, and would miss about four days of work every month due to her impairments. (Tr. 628-32.)

Dr. Oldham's RFC questionnaire is the only functional assessment, *by an examining medical source*, of Lance's mental and intellectual abilities to perform

---

[7]A treating physician's opinion generally will be given controlling weight if it is "supported by medically acceptable clinical and diagnostic techniques" and is *"consistent with other substantial evidence in the record."* Andrews v. Colvin, 791 F.3d 923, 928 (8th Cir. 2015) (emphasis added).

work-related tasks. The only other mental functional assessment in the record is that of the state agency "reviewing" consultants, which does not constitute substantial evidence to support the mental RFC determination.[8] This is particularly true in this case, where the state consultants only reviewed the medical evidence through May 2012, which thus did not include Dr. Oldham's July 25, 2013 RFC questionnaire or his treatment notes from nine additional sessions. (Tr. 462, 509, 634-44.)

Third, the ALJ erred in affording "significant" weight to the consulting opinion of Dr. Johnson without obtaining clarification from her regarding the extent of Lance's limitations. On May 3, 2012, Dr. Johnson examined Lance and diagnosed her with hearing loss, decreased visual acuity, back pain, hypothyroidism, asthma, anxiety, depression, a reported learning disability, and attention deficit disorder. Dr. Johnson expressed the opinion that Lance had "severe limitations."[9] (Tr. 485.) However, she: (1) did not identify which of Lance's abilities were limited; (2) specify if those limitations were due to impairments that were physical, mental or both; or (3) provide a functional assessment of the extent to which Lance's unidentified "severe

---

[8] *See Vossen*, 612 F.3d at 1016 (the opinions of a "non-treating, non-examining physician" normally do not constitute substantial evidence to support an RFC assessment).

[9] This finding was in response to an instruction to assess "the severity of limitations (mild, moderate, severe)" in "this claimant's ability to walk, stand, sit, lift, carry, handle, finger, see, hear or speak, etc."

limitations" affected her ability to perform any work-related activities.[10]

Finally, the ALJ erred in rejecting the opinions of Dr. Wilson regarding Lance's ability to sit, stand and lift/carry, without identifying, or if necessary obtaining, other medical evidence from a treating or examining medical source regarding the extent to which Lance's physical impairments affect her ability to engage in those work-related activities.

Dr. Wilson treated Lance for low back pain more than thirty times between January 2012 and July 2012. On August 2, 2013, he completed a "Physical Residual Functional Capacity Questionnaire." (Tr. 622-26.) His RFC questionnaire is the only functional assessment in the record, *by an examining medical source*, of Lance's ability to sit, stand and lift/carry, all of which are critical to the ALJ's determination that Lance can perform the exertional activities required to do medium work. As discussed, the opinions of state agency "reviewing" consultants are not sufficient to support the ALJ's physical RFC determination. In addition, the state consultants appear to have based their opinion regarding Lance's physical limitations primarily on Dr. Johnson's consultative evaluation, which did not specify – much less quantify

---

[10] If Dr. Johnson meant that Lance had "severe" physical limitations of some sort, it undermines the ALJ's finding that Lance had no "severe" physical impairments other than hearing loss. If Dr. Johnson meant that Lance had "severe" mental limitations, it provides further support for the opinions of Dr. Oldham and Dr. Boyd that Lance had "serious" or "significant" limitations in intellectual or mental functioning.

– the extent of those limitations. It does not appear that the state consultants reviewed *any* of Dr. Wilson's extensive treatment or diagnostic records, or his detailed physical RFC assessment. (Tr. 451-54, 490-91, 500, 511-12, 514, 548-619.)

### III. Conclusion

This case must be remanded so that the ALJ can correct the deficiencies discussed above. The ALJ must update the medical records with any additional opinions, treatment notes, or diagnostic results. The ALJ must then re-evaluate the entire record, reformulate his RFC assessments, and proceed through the sequential evaluation.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is REVERSED and this matter is REMANDED to the Commissioner for further proceedings pursuant to "sentence four," within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

DATED this 14th day of March, 2016.

_____
UNITED STATES MAGISTRATE JUDGE